UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE PENNSYLVANIA AVENUE FUNDS,
Individually And On Behalf of All Others
Similarly Situated,

Civil Action No. 08-cv-06857-PKC

Plaintiff,

vs.

INYX INC., JACK KACHKAR, STEVEN
HANDLEY, RIMA GOLDSHMIDT, JAY M.
GREEN and BERKOVITS & COMPANY, LLP,

Defendants.

**DEFENDANTS INYX, INC., JACK KACHKAR, RIMA GOLDSHMIDT AND JAY
GREEN'S REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION
TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

INTRODUCTION.......... ........................................................................................................... 1

I.      PLAINTIFFS' COMPLAINT DOES NOT ADEQUATELY PLEAD
SCIENTER.................................................................................................................2

A.      Plaintiffs' Allegations Are Solely And Improperly Based
On The Group Pleading Doctrine................................................................ 2

      1.   Plaintiffs Have Failed To Adequately Plead Scienter
Against Defendant Goldshmidt............................................................ 5

      2.   Plaintiffs Have Failed To Adequately Plead Scienter
Against Defendant Green...................................................................... 7

      3.   Plaintiffs Have Failed To Adequately Plead Scienter
Against Defendant Kachkar ............................................................. 10

B.      Plaintiffs Have Not Adequately Alleged Motive ...................................... 12

C.      Plaintiffs Have Not Adequately Plead Opportunity.................................. 14

D.      Allegations Of GAAP Violations Do Not Provide Evidence
Of Scienter.................................................................................................. 15

E.      The Resignations Do Not Provide Evidence Of Scienter ......................... 16

F.      Zinn's Failure To Sign Off On The 10-Q And 10-K Does
Not Provide Evidence Of Scienter ........................................................... 16

G.      The Sox Certifications Do Not Provide Evidence Of Scienter ................ 17

II.      PLAINTIFFS' CONFIDENTIAL SOURCES ARE NOT FULLY
IDENTIFIED AND, THEREFORE, ARE UNRELIABLE................................... 18

CONCLUSION.................................................................................................................... 19

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

## **TABLE OF AUTHORITIES**

**Cases**

*Acito v. Imcera Group, Inc.* 47 F.3d 47 (2d Cir. 1995)................................................................ 12

*ATSI Communications, Inc. v. Shaar Fund, Ltd.,* 483 F.3d 87 (2nd Cir. 2007).................... 2, 7, 10

*Carter-Wallace, Inc. v. Hoyt,* 150 F.3d 153 (2d Cir. 1999) ......................................................... 15

*Chill v. GE.,* 101 F.3d 263 (2d. Cir. 1996) .................................................................................. 16

*Coronel v. Quanta Cap. Holdings, Ltd.,* 2009 U.S. Dist. LEXIS 6633 (S.D.N.Y. Jan. 23, 2009)17

*Davidoff v. Farina,* 2005 US. Dist. LEXIS 17638 (S.D.N.Y. August 19, 2005)......................... 15

*Ferris, Baker Watts, Inc. v. Ernst & Young, L.L.P.,* 395 F.3d 851 (8th Cir. 2005) ...................... 16

*Gross v. Medaphis Corp.,* 977 F. Supp 1463 (N.D. Ga. 1997) ..................................................... 13

*In re Avon Products, Inc.* 2009 U.S. Dist. LEXIS 34564 (S.D.N.Y. February 23, 2009) ........ 2, 15

*In re Bayer AG Sec. Litig.,* 2004 U.S. Dist. LEXIS 19593 (S.D.N.Y. Sept. 30, 2004) ........... 2, 15

*In Re BISYS Sec. Litig.,* 397 F. Supp. 2d 430 (S.D.N.Y. 2005) ............................................... 2, 15

*In re Complete Management Inc. Sec. Litig.,* 153 F. Supp. 2d 314 (S.D.N.Y. 2001)............... 3, 15

*In re Computer Technology, Inc. Sec. Litig.,* 149 F. Supp. 2d 334 (W.D. Tenn. 2001) .............. 13

*In re Corning Sec. Litig.,* 2004 U.s. Dist. LEXIS 8741 (W.D.N.Y. 2004) ................................... 14

*In re Hypercom Corp. Sec. Litig.,* 2006 U.S. Dist. LEXIS 45482  (Dist. Az. July 5, 2006) ........ 18

*In re Intelligroup Sec. Litig.,* 527 F. Supp. 2d 262 (Dist. N.J. 2007)..................................... 15, 17

*In re Invision Technologies, Inc. Sec. Litig.,*
  2006 U.S. Dist. LEXIS 12166 (N.D. Cal. January 21, 2006) .................................................... 13

*In re Lattice Semiconductor Corp. Secs. Litig.,* 2006 U.S. Dist. LEXIS 262 (D. Or. 2006) .. 13, 18

*In re MicroStrategy, Inc. Sec. Litig.,* 115 F. Supp. 2d 620 (E.D. Va. 2000)................................. 13

*In re Parmalat Sec. Litig.,* 594 F. Supp. 2d 444 (S.D.N.Y. 2009) ............................................... 14

*In re The First Union Corp. Sec. Litig.,* 128 F. Supp. 2d 871 (W.D.N.C. 2001)....................... 3, 13

*In re Time Warner Inc. Sec. Lit.,* 9 F.3d 259 (2d. Cir. 1993)........................................................ 12

*In re Watchguard Sec. Litig.,* 2006 U.S. Dist. LEXIS 27217 (W.D. Wash. April 21, 2006) ....... 17

*In re Williams Sec. Litig.,* 339 F. Supp. 2d 1206 (N.D. Okla. 2003) ............................................. 9

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

*Kalnit v Eichler*, 264 F.3d 131 (2d Cir. 2001) ............................................................. 12

*Katz v. Image Innovations Holdings, Inc.*, 542 F. Supp. 2d 269 (S.D.N.Y. 2008) .................... 5, 7

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ....................................................... 12, 15

*Patel v. Parnes*, 253 F.R.D. 531 (C.D. Calf. 2008) ...................................................... 18

*Petco Animal Supplies, Inc. Sec. Litig.*,
  2006 U.S. Dist. LEXIS 97927 (S.D. Cal. July 31, 2006) ............................................... 10

*PR Diamonds, Inc. v. Chandler*, 364 F.3d 671(6th Cir. 2004) ...................................... 16

*Saxton, Inc. Sec. Litig.*,156 Fed. App. 917 (9th Cir. 2005) ........................................ 16

*Shields v. City-Trust Bancorp, Inc.*, 25 F.3d 1124 (2d. Cir. 1994) ............................... 12, 14

*Stevelman v. Alias Research, Inc.*, 174 F.3d 79 (2d Cir. 1999) ...................................... 15

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
  531 F.3d 190 (2d. Cir. 2008) ................................................................... 2, 15

*Weiss v Amkor Technology, Inc.*, 527 F. Supp. 2d 938 (Dist. Ariz. 2007) ............................. 18

*Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553 (6th Cir. 2005).............................. 16

*Zucco Partners, LLC v. Digimarc Corporation*, 552 F.3d 981(9th Cir. 2009)............... 16, 18, 19

**Statutes**

15 U.S.C.§ 78u-4 (b)(2) ......................................................................... 2

Private Securities Litigation Reform Act of 1995..................................................... 1

**Rules**

Fed. R. Civ. P. 9(b)............................................................................. 1

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

**INTRODUCTION**

There are numerous independent reasons why Plaintiffs' Complaint should be dismissed: 1) Plaintiffs' scheme allegations fail to plead misrepresentations and omissions with the requisite particularity; 2) Plaintiffs' public statement allegations fail to plead misrepresentations and omissions with the requisite particularity; 3) the public statements regarding guidance are covered by the safe harbor for forward-looking statements; 4) the public statements regarding the going private transaction do not plead fraud with the requisite specificity; 5) Plaintiffs did not sufficiently plead *scienter*; 6) Plaintiffs have not sufficiently plead loss causation; and 7) Plaintiffs have failed to plead a § 20(A) claim.

Defendants' persuasive arguments have been fully briefed and need not all be repeated here. Nothing said in Plaintiff's Memorandum in Opposition undercuts the merits of the reasons for dismissal advanced by Defendants Inyx, Inc., Jack Kachkar, Rima Goldshmidt and Jay Green (hereinafter collectively "Defendants"). Consequently, Defendants will stand on their principal brief on all arguments with only the following exception.

Defendants seek dismissal against them based on the universally excepted legal principal that to plead *scienter* as required by Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA") the Complaint must plead a state of mind with specificity as to each named defendant. Claims that rely on *scienter* allegations not specific to each defendant should be dismissed against that defendant. In Plaintiffs' Memorandum in Opposition, Plaintiffs cite case law at length, but they do not deal with this critical issue. Instead, they sidestep it and hope to hide the significant inadequacy of their pleading under a mountain of cited cases (none

that helps them with this issue) and an avalanche of a 65 page memorandum[1] (all which merely reiterates Plaintiffs improper use of group pleading).

I.    PLAINTIFFS' COMPLAINT DOES NOT ADEQUATELY PLEAD SCIENTER AGAINST DEFENDANTS

      A.    Plaintiffs' Allegations Are Solely And Improperly Based On The Group Pleading Doctrine

Plaintiffs cannot rely on collective or group pleading when pleading allegations of scienter. See *In re BISYS Sec. Litig.,* 397 F. Supp. 2d 430, 440 (S.D.N.Y. 2005); 15 U.S.C.§ 78u-4 (b)(2)[2].  Rather, where individual defendants are named, the Complaint must meet the PSLRA's strict pleading requirements ***"separately for each defendant."*** *In re Avon Products, Inc.* 2009 U.S. Dist. LEXIS 34564 *60-61 (S.D.N.Y. February 23, 2009) (emphasis added) citing *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.,* 531 F.3d 190, 193-194 (2d. Cir. 2008); *In re BISYS Sec. Litig.,* 397 F. Supp. 2d 430, 440 (S.D.N.Y. 2005); *In re Bayer AG Sec. Litig.,* 2004 U.S. Dist. LEXIS 19593 (S.D.N.Y. Sept. 30, 2004).  Scienter may be inferred from (i) facts showing that a defendant had "both motive and opportunity to commit fraud," or (ii) facts that constitute "strong circumstantial evidence of conscious misbehavior or recklessness," but to do so, the Plaintiff must allege specific facts (e.g. the who, what, when and where) separately ***for each defendant.*** *ATSI Comm'ns v. Shaar Fund, Ltd.,* 493 F.3d 87, 99 (2d Cir. 2007) (particularity requires that plaintiff plead with specificity not only the what, where and when of each alleged fraudulent statement, but also the reason why the statements were

---

[1]  Plaintiffs' Brief In Opposition was far beyond the page limit extension granted by this Court. [Docket No. 37].

[2]  "In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, ***the complaint shall***, with respect to ***each act*** or omission alleged to violate this chapter, ***state with particularity*** facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(emphasis added)

fraudulent.) "Particularity of pleading is required with regard to the time, place, speaker, and contents, as well as the manner in which statements are false and the specific acts raising an inference of fraud-the who, what, where, why and when." *In re The First Union Corp. Sec. Litig.,* 128 F. Supp. 2d 871, 884 (W.D.N.C. 2001) "Plaintiffs are forbidden from 'grouping defendants together without specifying which defendant committed which wrong' and are required instead to 'set forth with particularity each defendant's culpable conduct." *The First Union Corp, supra.* Only when a plaintiff has specifically alleged defendant's knowledge of facts or access to information contradicting their public statements will plaintiff survive a motion to dismiss. *In re Complete Management Inc. Sec. Litig.*, 153 F. Supp. 2d 314, 325 (S.D.N.Y. 2001)

Tellingly, in answer to the contention that *scienter* has not been plead as to *each individual defendant*, Plaintiffs identify, almost entirely, Complaint references to the "Individual Defendants" and "Inyx Defendants".[3]  Plaintiffs inform this Courts that they have "adequately plead[] that the **Inyx Defendants** knew facts or had access to information" and that the "Complaint alleges that each **Individual Defendant** was an active participant in the fraud...." *Plaintiffs' Memorandum in Opposition, p. 24 (emphasis added)).*  Plaintiffs' citation to these 'group pleading' allegations in the Complaint validates Defendants' argument. This is exactly the sort of deficient group pleading that is disbursed throughout the Complaint. See e.g. *Plaintiffs' Memorandum In Opposition, pp. 24-36*

The Complaint's *scienter* pleading deficiency is immediately apparent when the allegations in the Complaint are identified and cataloged as either an allegation against an

---

[3] As to the select few Complaint references to an individual defendant, none provide any particularity to rise to the level of evidence of scienter.  The insufficiency of each is discussed in greater detail on pages 5-11 of this reply brief.

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

individual defendant or as to the collective (group pleading) Individual Defendants or Inyx Defendants. Defendants provide in foot notes 6, 7 and 8 below a fairly exhaustive summary of the allegations.[4]

Rather than provide this Court with specific identification of what each individual defendant knew, when they knew it and what they were responsible for, Plaintiffs instead make vague and broad allegations – with no factual specificity – during the few specific references to an individual defendant or, as stated above, Plaintiffs improperly rely on the group pleading doctrine, collectively making allegations against the defendants as "Individual Defendants" or "Inyx Defendants".[5] The numbers alone tell the story. Of the 291 paragraphs in the Complaint, over 100 of the paragraphs contain group pleading allegations as to either the "Inyx Defendants" or "Individual Defendants".[6] Whereas, in the entire 130 page document there are only a handful of specific references to either Defendant Green[7] or Defendant Goldshmidt[8], and only slightly more references to Defendant Kachkar. Plainly, Plaintiffs do not have (because they do not exist) specific facts to allege against the individual defendants. As a result, Plaintiffs resort improperly to the use of broad and vague allegations made against the individual defendants

---

[4] See footnote 6 for a list of paragraphs within the Complaint that rely on group pleading allegations. See footnote 7 and 8 for a fairly exhaustive listing of paragraphs which specifically name defendants Green or Goldshmidt.

[5] Paragraph 14 states, "Defendants Kachkar, Handley, Goldshmidt and Green are collectively referred to herein as the "Individual Defendants." Inyx and the Individual Defendants are collectively referred to herein as the Inyx Defendants."

[6] See Paragraphs 16, 17, 18, 19, 20, 34, 35, 37, 38, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 53, 54, 55, 57, 58, 59, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 92, 93, 94, 99, 102, 106, 114,118, 121, 125, 129, 130, 131, 133, 138, 146, 151, 153, 159, 161, 174, 176, 205-230, 265 and 269

[7] Complaint ¶¶ 13, 36, 40, 87 and 268

[8] Complaint ¶¶ 12, 36, 57, 66, 87, 95, 154-156, 266 and 268

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

collectively.  The law, however, is soundly established that *scienter* can not be plead in this fashion, but rather must be specifically alleged as to each defendant.

      1.      Plaintiffs Have Failed To Adequately Plead Scienter Against Defendant Goldshmidt

Plaintiffs have failed to adequately plead scienter as to defendant Goldshmidt.  Outside of the initial introductory paragraph, there are only limited references to Defendant Goldshmidt in the Complaint and ***none of which provide any specific allegation of scienter*** as to Ms. Goldshmidt.  See e.g., *Complaint ¶¶ 12, 36, 57, 66, 87, 95, 154-156, 266 and 268.*  The allegations regarding Ms. Goldshmidt are either: 1) broad and ambiguous assertions of alleged involvement regarding alleged fraudulent or misleading statements, *See Paragraphs 12, 36, 87 and 266*; 2) innocuous statements that are not allegations of any wrongdoing, *See Paragraphs 57, 66, 95 and 154-156*; or 3) statements that exonerate Ms. Goldshmidt from any intentional wrongdoing. *See Paragraphs 154 and 268.*

The cases cited by Plaintiffs are distinguishable from the facts of this case and do not support a finding that Plaintiffs have met their pleading burden.  Contrary to Plaintiffs' assertion, *Katz v. Image Innovations Holdings, Inc.*, 542 F. Supp. 2d 269, 273 (S.D.N.Y. 2008) does not support a finding that scienter was adequately plead, but rather supports a finding that Plaintiffs have not adequately pled scienter as to Ms. Goldshmidt.  Plaintiffs point to ¶ 36[9] and ¶ 268[10] of

---

[9] Paragraph 36 states: "To withdraw funds from the revolving lines of credit under the Loan Agreements, Inyx was required to submit information derived from and copies of accounts receivable invoices for each Inyx operating subsidiary to Westernbank on a daily basis.  Inyx was also required to provide Westernbank with monthly reports of the accounts receivable. Based upon those invoices, Inyx would then be permitted to withdraw funds from the lines of credit equal to a certain percentage of eligible accounts receivable.  This process would start by the operating subsidiaries transmitting their accounts receivable invoices to defendant Goldshmidt on a daily basis.  Defendant Goldshmidt, thereafter, prepared or caused others to prepare assignment sheets that listed the invoices received.  The assignment sheets were then submitted to Westernbank.  Defendant Goldshmidt further caused copies of the invoices to be

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

the Complaint (and only those two paragraphs) to try to argue that they have plead *scienter* as to

defendant Goldshmidt. *See Plaintiffs' Memorandum in Opposition, p. 25.*  In both Paragraphs,

however, Plaintiffs simply allege that Goldshmidt was involved in the process of transmitting

account receivable invoices from the subsidiaries to Inyx and from Inyx to Westernbank and

makes a broad conclusory statement that the "invoices and accounts receivable reports submitted

by the Inyx Defendants were fraudulent and created by defendant Goldshmidt at the direction of

defendants Kachkar, Handley and Green."  Plaintiffs do not identify a single other paragraph in

the in the 291 paragraph 130 page Complaint.  They do not because it does not exist.  They

cannot point to a single specific allegation of *scienter.*  In *Katz,* where the pleadings were

similarly sparse, the *Katz* Court dismissed three of the individual defendants finding that the

complaint "failed to particularize any material misstatements or omissions" by those defendants.

*Katz,* 542 F. Supp. 2d at 272.  The Court held that while the complaint "suggests that these

defendants are liable as participants in a fraudulent scheme" an allegation of 'scheme liability'

does not provide the requisite particularity.

---

transmitted from Inyx to Westernbank.  On a regular basis, the ***Inyx Defendants*** also transmitted
accounts receivable reports that provided summations and tabulations of the earlier submitted
documentation.  If Westernbank determined, after reviewing the information, that sufficient
collateral in the form of eligible accounts receivable existed to allow and secure further funding,
Westernbank would authorize additional funds to be advanced to Inyx under the lines of credit.
However, the invoices and accounts receivable reports submitted by the ***Inyx Defendants*** were
fraudulent and created by defendant Goldshmidt at the direction of defendants Kachkar,
Handley, and Green." *Complaint, Paragraph 36.*

[10] Paragraph 268 states: " Further, defendant Goldshmidt was named on all of Inyx's accounts,
and was involved in managing Inyx's affairs, including being directly involved in the financing
obtained from Westernbank and the allocation and use of the Westernbank financing and the
payments Inyx received from their customers.  However, according, to Zinn, defendant
Goldshmidt would not do anything without defendant Green, who also was directly involved
with the dealings with Westernbank, and would approve her actions.  Furthermore, according to
Zinn, defendant Kachkar helped defendant Goldshmidt buy her house.

While the *Katz* court did find that there was sufficient factual allegations as to another fourth individual defendant, the allegations asserted against that defendant were particularized, unlike those asserted against either defendant Goldshmidt, Green or Kachkar. *Katz*, 542 F. Supp. 2d at 272. In *Katz*, in addition to alleging that the defendant was the chief operating officer and that he reviewed invoices before faxes them, the *Katz* complaint also alleged that the defendant had also been the person who *supplied* the information used to generate the invoices for the fictitious sales – therefore directly attributing knowledge to the defendant. In this case, there is no such knowledge attributed to defendant Goldshmidt. Rather, she is merely accused of *transmitting* invoices that were given to her and overseeing the documentation of those invoices on assignment sheets. *Complaint, ¶ 36.*

> 2.    Plaintiffs Have Failed To Adequately Plead Scienter Against Defendant Green

Initially, it should be noted that Mr. Green was only elected to the Inyx Board of Directors on July 1, 2007, just one (1) day prior to Inyx filing bankruptcy and the end of the purported Class Period. *Complaint, ¶¶ 1, 13.* Prior to July 1, 2007, Mr. Green was an executive vice president and was not a director of the company. *Complaint, ¶ 13.*

Only a handful of paragraphs in the Complaint even mention defendant Green. See e.g., *Complaint ¶¶ 13, 36, 40, 87 and 268.* None of them plead the requisite factual information necessary to show (i) that Mr. Green had "both motive and opportunity to commit fraud," or (ii) "strong circumstantial evidence of conscious misbehavior or recklessness," *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 483 F.3d 87 (2nd Cir. 2007). For instance, Paragraph 13 simply Plaintiff asserts that Mr. Green "issued false and misleading statements about the Company's financial condition and prospects", but Plaintiff never identifies *what* false and misleading statements were made by Mr. Green, never tells us *why* they were false, *when* they

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

were made and *which* were relied on by Plaintiffs. *Complaint, ¶ 13* Paragraph 36 loosely claims

that "invoices and accounts receivable reports submitted by the Inyx Defendant were fraudulent

and created by defendant Goldshmidt at the direction of defendants Kachkar, Handley and

Green." *Complaint, ¶ 36* Again, Plaintiffs never identify a single invoice or account receivable

report in which Mr. Green is alleged to have created. Likewise, in Paragraph 87, Plaintiffs allege

that Green, along with Kachkar and Goldshmidt, gave "false assurances to Westernbank in June

2006." *Complaint, ¶ 87* Again, nowhere in the entire 291 paragraph Complaint do Plaintiffs

provide any specific allegation of a false assurance given by Mr. Green to Westernbank.

Likewise, the "allegations" made in ¶¶ 40 and 268 can hardly be characterized as

allegations of wrong doing. Paragraph 40 states:

> "[I]n November 2006, *defendant Green informed* Mike Vasquez,
> President of the Business Division of *Westernbank*, that $37.7
> million of pre-billings in Inyx's accounts receivable, which were
> part of the collateral based securing Inyx's revolving line of credit,
> were *going to be written off*. However, Montanez testified that the
> ***Individual Defendants*** assured Westernbank that the receivables
> were good, that they were research and development
> receivables....."

*Complaint, ¶ 40* (emphasis added). Paragraph 40 specifically references Green only as to having

informed Westernbank that certain receivables were going to be written off by Inyx. This type

of disclosure is contrary to Plaintiffs' allegations of fraud. *Complaint, ¶ 40.* Notably, the one

allegation of alleged fraud is made against the ***Individual Defendants***, an allegation by group

pleading that does not support a finding of *scienter* as to any individual defendant. Additionally,

this Court should note that in Plaintiffs' Memorandum in Opposition, Plaintiffs incorrectly

portray the allegation in Paragraph 40[11] as a direct quote from defendant Green. *Plaintiffs'*

---

[11]   In his Brief in Opposition, Plaintiff also incorrectly cites to ¶ 37. The allegation cited, however, is actually contained within ¶ 40.

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

*Memorandum in Opposition, p. 26.* A simple review of the Complaint reveals that the allegation, as plead, is attributed to the ***Individual Defendants*** and not to defendant Green as inferred in Plaintiffs' Memorandum in Opposition. Finally, *In re Williams Sec. Litig.*, 339 F. Supp. 2d 1206 (N.D. Okla. 2003) is easily distinguishable and provides no support for a finding of scienter. *Plaintiffs' Memorandum in Opposition, p. 26.* Unlike the pleadings in this case, in *Williams* the pleading provided specific factual allegations of Defendant Kalika's involvement in negotiations and discussions with WCG's financial lenders, provided specific factual allegations of defendant Kalika's knowledge of WCG's violation of financial covenants and defendant Kalika's involvement in all aspects of the spin-off and signing of the Separation Agreement. Here, there are no specific factual allegations of any involvement by Green in the negotiations with the lenders, nor could there be since he was not in a position to have done so at the time the loan was entered into. Nor are there any factually specific allegations that defendant Green had actual knowledge of any violation of financial covenants. Moreover, there are no specific factual allegations that Green signed any of the documents with the lender or any of the SEC filings or was ever quoted in a press release.

Paragraph 268 equally fails to plead scienter. Paragraph 268 states in relevant part:

> "Further, defendant Goldshmidt was named on all of Inyx's accounts, and was involved in managing Inyx's affairs, including being directly involved in the financing obtained from Westernbank and the allocation and use of the Westernbank financing and the payments Inyx received from their customers. However, according to Zinn, defendant Goldshmidt would not do anything without ***defendant Green***, who also was directly involved with the dealings with Westernbank, and would approve her actions..."

*Complaint, ¶ 268* (emphasis added). Paragraph 268 simply references Green in the abstract, claiming that defendant Goldshmidt would not act without him and claiming that he had some

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

undefined and unidentified involvement with Westernbank. This broad and vague allegation does not provide the particularity required to allege scienter. *ATSI*, 493 F.3d at 99 (particularity requires that plaintiff plead with specificity not only the what, where and when of each alleged fraudulent statement, but also the reason why the statements were fraudulent.) *Petco Animal Supplies, Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 97927 *45 (S.D. Cal. July 31, 2006), an unpublished decision cited by Plaintiff , is easily distinguished and provides no support for a finding of scienter. See *Plaintiffs' Memorandum in Opposition, p. 26.* The *Petco* court held that scienter had been pled as to defendant Brann and Richter because the "[complaint] contain[ed] sufficient *specific facts* of their participation in the orders to hold bank invoices…" *Petco, at *45* (emphasis added). Here, Plaintiffs have not alleged any *specific facts* as to defendant Greens involvement (or that of defendants Goldshmidt or Kachkar).

> 3. Plaintiffs Have Failed To Adequately Plead Scienter Against Defendant Kachkar

Like defendants Green and Goldshmidt, Plaintiffs have not adequately alleged *scienter* as to defendant Kachkar. In their Memorandum in Opposition to Defendants' Motion, Plaintiffs cite to six (6) paragraphs in the Complaint which they claim allege *scienter* individually as to Mr. Kachkar. *Memorandum, pp. 26-27 citing Complaint ¶¶ 66, 68, 71-72, 266 and 269.* None of the allegations contained in those paragraphs come close to meeting the PSLRA's heightened pleading standard.

Paragraph 266 is an overly broad allegation that "defendant Kachkar made most of the decisions involving Inyx…" The types of decisions made, when they were made, and why they were made is not identified. The allegation is qualified by the word "most", so Plaintiffs do not allege that Kachkar made all of the decisions. The allegation is silent as to which decisions he purportedly did make. Moreover, the allegation is attributed to Zinn. Zinn, however, did not

become employed at Inyx until late in the Class Period, so he is incapable of having any personal knowledge before that time. *Complaint, ¶154*  Furthermore, during the better part of Zinn's employment, he is alleged to have only been involved with company acquisitions and, therefore, has no personal knowledge during that time of any corporation actions beyond acquisitions. *Complaint, ¶ 155.*

The sole mention of defendant Kachkar in Paragraph 268 is that he "helped defendant Goldshmidt buy her house."  The fact that Plaintiffs rely on this Paragraph in support of a showing of *scienter* demonstrates the pathetic woefulness of the allegations against Mr. Kachkar.

Paragraphs 66, 68, 71-72 do not allege scienter as to Mr. Kachkar, but rather demonstrate Plaintiffs' use of group pleading.  Rather than plead specific (who, what, where and when) factual allegations as to the individual defendants, the allegations relating to Mr. Kachkar are vague and non-specific.  For example, ¶ 66 only broadly states that "on other occasions [Kachkar or Handley] directed or caused others to direct UCM to make wire payments..."  There is no allegation as to what actual direction was given by Mr. Kachkar and no allegation as to the actual dates or what specific wire payments he was involved with.  Similarly, in ¶ 71 Mr. Kachkar is alleged to have "misrepresented to Rose that the diversion of funds was appropriate and permissible."  Again, there is no specific allegation as to when this statement was allegedly made, no allegation as to the specific wire or funds that were the subject of this alleged comment, nor any explanation why the statement is purportedly false.  Rather, any specifics (albeit still vague) about the alleged diversion of funds are only alleged in regards to the "Inyx Defendants". *Complaint, ¶ ¶ 70, 71 and 72.* Such allegations do not support a finding of *scienter* as to an individual defendant.

B.    Plaintiffs Have Not Adequately Alleged Motive.

"Sufficient motive allegations entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *Kalnit v Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). "Motives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud." *In re Bausch & Lomb*, 592 F. Supp. 2d 323, 343-44 (W.D.N.Y. 2008) quoting *Kalnit,* 264 F.3d at 138. In this case, Plaintiffs' sole allegation of motive is that funds "diverted by the *Individual Defendants* from Westernbank to Inyx was used to pay the *Individual Defendants'* personal compensation." ¶ 269. This does not satisfy the PSLRA's pleading standards. Allegations that actions were motivated a by desire to receive or increase compensation are insufficient. *Kalnit v Eichler*, 264 F.3d 131, 139 (2d Cir. 2001); *Novak v. Kasaks*, 216 F.3d 300, 307-308 (2d Cir. 2000); *Shields v. City-Trust Bancorp, Inc.,* 25 F.3d 1124,1130 (2d. Cir. 1994)(court rejected as insufficient plaintiff's allegations that the defendants concealed and misrepresented the corporation's financial condition to inflate the price of the common stock and to maintain artificially high prices in order to protect their executive positions and compensation.); *Acito v. Imcera Group, Inc.* 47 F.3d 47, 54 (2d Cir. 1995). Moreover, as with the vast majority of the Complaint, this allegation fails to particularizes the allegation against each individual defendant, but rather impermissibly refers to the collective "Individual Defendants" (group-pleading).

Plaintiffs next argue that "particularized corporate motives can demonstrate scienter." *Plaintiffs' Memorandum in Opposition, p. 33*. In support, Plaintiffs cite to *In re Time Warner Inc. Sec. Lit.*, 9 F.3d 259, 269 (2d. Cir. 1993). Plaintiffs' reliance on *Time Warner* is misplaced as the holding in *Time Warner* was superceded by statute and it is no longer good law. *In re The First Union Corp. Sec. Litig.,* 128 F. Supp. 2d 871, 885 (W.D.N.C. 2001). Similarly, Plaintiff's

reliance on *Gross v. Medaphis Corp.*, 977 F. Supp 1463 (N.D. Ga. 1997) is also misplaced as the *Gross* court applyied a <u>pre</u>-PSLRA standard. *Gross*, 977 F. Supp. at 1472. The other cases cited by Plaintiffs are equally unavailing to support a finding of scienter. *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 648-649 (E.D. Va. 2000). In finding that *scienter* had been adequately plead, the *MicroStrategy* court found it significant that there were <u>specific factual allegations</u> of insider trading <u>regarding the individual defendants</u>. *MicroStrategy*, 115 F. Supp. 2d at 643-47 (emphasis added)(noting that the insider trading by individual defendants lend support to the inference of scienter.) In this case, there are no allegations of insider trading as to any of the individual defendants, which "actually negates an inference of *scienter*". *In re Computer Technology, Inc. Sec. Litig.*, 149 F. Supp. 2d 334, 350-351 (W.D. Tenn. 2001)(where the complaint contains "no allegations of insider sales…[t]his factor actually negates an inference of scienter.")

Plaintiffs next cite to *In re Lattice Semiconductor Corp. Secs. Litig.*, 2006 U.S. Dist. LEXIS 262 (D. Or. 2006), an unpublished decision, but *In re Lattice* fails to provide any support for an argument that scienter has been adequately plead as to the individual defendants in this case. In *Lattice* it was alleged that the defendants *admitted* that there had been improper accounting entries. There are no such allegations in this case. *See In re Invision Technologies, Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 12166 (N.D. Cal. January 21, 2006). Furthermore, in their Memorandum in Opposition, p. 33, Plaintiffs refer solely to Defendant ***Inyx*** and its actions, but, once again fail to plead as to the individual defendants. *Plaintiffs' Memorandum in Opposition, p. 33*

      C.      Plaintiffs Have Not Adequately Plead Opportunity.

Again, Plaintiffs have not sufficiently plead "opportunity" as to each individual defendant. "Opportunity requires demonstrating 'the means and likely prospect of achieving' those means through the fraudulent statements." *In re Corning Sec. Litig.,* 2004 U.s. Dist. LEXIS 8741 (W.D.N.Y. 2004) *quoting Shields v. Citytrust Bancorp,* 25 F.3d 1124, 1125 (2d Cir. 1994). Like the Plaintiff in *In re Corning,* Plaintiffs have failed "to allege facts showing that the individual making the statement, or authorized to make it…had actual knowledge of its falsity, or was reckless." A review of the section on "opportunity" contained in Plaintiffs' Memorandum in Opposition demonstrates that they rely solely on allegations based on group pleading. Other than the introductory paragraphs where Plaintiffs introduce the defendants and state what positions the defendants held with Inyx, (*Memorandum,* p. 35 and *Complaint, ¶¶10, 12-13),* the Complaint citations referenced in Plaintiffs' Memorandum refer only to the "Individual Defendants" or "Inyx Defendants". See *Plaintiffs' Memorandum in Opposition, pp. 36-37 citing Complaint, ¶¶16-20, 36, 56-85 and 93.* Accordingly, Plaintiffs have not shown evidence that the Complaint has plead "opportunity" as to each individual defendant.

Moreover, as stated in Defendants' principal memorandum, all of the alleged nefarious actions relate to separate legal non-US entities.[12] Plaintiffs have not made any allegations as to any of the individual Defendants respective positions with any of the relevant entities. "It is a well-established principle of corporate law that directors and officers holding positions with a parent and its subsidiary can and do change hats to represent the two corporations separately, despite their common ownership. *In re Parmalat Sec. Litig.,* 594 F. Supp. 2d 444, 459 (S.D.N.Y.

---

[12] Inyx's wholly-owned subsidiaries included Inyx USA, Ltd. (Inyx USA"), Inyx Pharma Limited ("Inyx Pharma"), Inyx Canada Inc. ("Inyx Canada"), Exaeris, Inc. ("Exaeris") and Inyx Europe Limited ("Inyx Europe"). Ashton Pharmaceuticals Limited ("Ashton") was a wholly-owned subsidiary of Inyx Europe. *Compl, ¶ 9.*

2009). Control and *opportunity* cannot be implied as to a subsidiary simply based on the defendant's position with the parent company. *Id (emphasis added)*.

Finally, Plaintiffs cite *In re Complete Mgmt*, 153 F. Supp. 2d 314 (S.D.N.Y. 2001) in support of their assertion that they have adequately plead "opportunity". It should be noted that at the time the *In re Complete Mgmt* court wrote its opinion (as conceded by the court) "[i]t was [still] unclear exactly how that reform statute (the PSLRA) ha[d] modified the existing, relatively liberal pleading standard…" *Id. at 324*. The *In re Complete Mgmt* court accepted a more lenient group pleading style of pleading. Today, as stated above the Second Circuit requires specific pleading as to each defendant before evidence of scienter can be found. *In re Avon Products, Inc.* 2009 U.S. Dist. LEXIS 34564 *60-61 (S.D.N.Y. February 23, 2009)(emphasis added) citing *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 193-194 (2d. Cir. 2008); *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 440 (S.D.N.Y. 2005); *In re Bayer AG Sec. Litig.*, 2004 U.S. Dist. LEXIS 19593 (S.D.N.Y. Sept. 30, 2004).

D.    Allegations Of GAAP Violations Do Not Provide Evidence Of Scienter

"[A]llegations of GAAP violations or accounting irregularities alone are insufficient to state a securities fraud claim without evidence of corresponding fraudulent intent." *Davidoff v. Farina*, 2005 US. Dist. LEXIS 17638 * 55 (S.D.N.Y. August 19, 2005) quoting *Novak, 216 F.3d at 309*. "[C]ourts have uniformly held that allegations of scienter based on GAAP violations do not create the requisite strong inference of scienter unless plaintiffs' complaint alleges 'more.'" *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 286 (Dist. N.J. 2007) citing *Stevelman v. Alias Research, Inc.*, 174 F.3d 79, 84-85 (2d Cir. 1999); *Carter-Wallace, Inc. v. Hoyt*, 150 F.3d 153

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

(2d Cir. 1999); *Chill v. GE.*, 101 F.3d 263, 270 (2d. Cir. 1996)[13]. "[T]he 'more' envisioned by the courts consists of the panoply of such facts [for each defendant] which could sufficiently indicate that defendants had clear reasons to doubt the validity of the issuer's financials but, nonetheless, kept turning a blind eye to all such factual 'red flags.'" *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d at 287.  Plaintiffs, however, did not provide "more" as to each defendant.

      E.      The Resignations Do Not Provide Evidence Of Scienter

      Although resignations, terminations, and other allegations of corporate reshuffling may in some circumstances be indicative of scienter, the resignations alleged in case, however, do not. Resignations may create an inference of scienter in limited cases where there is no other reasonable explanation. *Zucco Partners, LLC v. Digimarc Corporation,* 552 F.3d 981, 1003 (9th Cir. 2009)  Here there is reasonable and, I n fact, much more probable explanation.  Defendant Goldshmidt and defendant Handley, along with Douglas Brown, Peter Littmann, Roger Harrison, Joseph Rotmil, David Zinn and Colin Hunter all resigned within days of the company declaring bankruptcy.  *Complaint, ¶ 191* It is reasonable to expect resignations, if not mass exodus, during the days leading up to a company's declaration of bankruptcy.   Because bankruptcy is a much more plausible explanation for the resignations, an inference of scienter has not been raised.

      F.      Zinn's Refusal to Sign Off on the 10-Q and 10-K Does Not Provide Evidence of Scienter

      Plaintiffs have failed to offer this Court any legal support or factual basis for their proposition that Zinn's alleged refusal to sign Inyx's third quarter 10-Q, and later 10-K is a compelling inference of *scienter*.  The sole case cited by Plaintiffs is unpublished and the quote

---

[13] See also *Wyser-Pratte Mgmt. Co. v. Telxon Corp.,* 413 F.3d 553 (6th Cir. 2005); *Ferris, Baker Watts, Inc. v. Ernst & Young, L.L.P.,* 395 F.3d 851, 855 (8th Cir. 2005); *Saxton, Inc. Sec. Litig.,*156 Fed. App. 917, 920 (9th Cir. 2005); *PR Diamonds, Inc. v. Chandler,* 364 F.3d 671, 694 (6th Cir. 2004)

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

from the case is simply *dicta*. See *Coronel v. Quanta Cap. Holdings, Ltd.,* 2009 U.S. Dist. LEXIS 6633, at *92 fn. 16 (S.D.N.Y. Jan. 23, 2009).

More importantly, an examination of the Complaint reveals that Plaintiffs <u>never</u> allege that Zinn refused to sign the 10-Q or 10-K.  Rather, only stated that Zinn would not sign the 10-Q until he received certain information that he wanted to review beforehand. *Complaint, ¶ 159.* Zinn was new to the company, having only becoming employed on May 16, 2006, *Complaint, ¶ 154.* During his "first several months of his employment, Zinn was not involved in the preparation of the SEC filings". *Complaint, ¶ 155*  Instead, "he concentrated solely on the Company's acquisitions." *Complaint, ¶ 155*  Therefore, it is not unreasonable to expect that he would need to review information before he would sign the SEC filing.  Accordingly, this allegation does not create an inference of scienter.

G.    The SOX Certifications Do Not Provide Evidence of Scienter

Contrary to Plaintiffs' assertion in their Memorandum in Opposition (p. 32), allegations of false Sarbanes-Oxley certifications do not provide evidence of scienter as to defendants Kachkar or Goldshmidt.[14] *In re Intelligroup Sec. Litig.,* 527 F. Supp. 2d 262, 289-90 (Dist. N.J. 2007)("erroneous SOX certification cannot establish the requisite strong inference of scienter..."); See also: *In re Watchguard Sec. Litig.,* 2006 U.S. Dist. LEXIS 27217 **33-34 (W.D. Wash. April 21, 2006)("Because the PSLRA places the burden on Plaintiffs to plead facts giving rise to a 'strong inference' that a defendant's head was above the sand, or was at least deliberately recklessly buried in the sand, its defendant-friendly provisions trump the plaintiff-friendly Sarbanes-Oxley Act...")  In their Memorandum in Opposition, Plaintiffs improperly cite *In re Lattice Semiconductor,* 2006 U.S. Dist. LEXIS 262 in support of their assertion that false

---

[14] Plaintiff makes no allegation that Mr. Green ever signed any of Inyx 10-K's or 10-Q's.

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

certifications "provide evidence of scienter." *Memorandum in Opposition, p. 32.* That was not the holding in *Lattice.* Rather, at the most, the *Lattice* court simply "concluded that the Sarbanes-Oxley certifications gave rise to an inference of scienter, but did not alone establish a strong inference of scienter." *In re Hypercom Corp. Sec. Litig.,* 2006 U.S. Dist. LEXIS 45482 * 36 (Dist. Az. July 5, 2006); See also *Patel v. Parnes,* 253 F.R.D. 531 (C.D. Calf. 2008) Unless the complaint asserts particularized facts indicating that, at the time of the certification, the individual defendant knew or consciously avoided any meaningful exposure to the information, an alleged false Sarbanes-Oxley certifications does not provide evidence of scienter. *In re Intelligroup,* 527 F. Supp. 2d at 290; See also *Weiss v Amkor Technology, Inc.,* 527 F. Supp. 2d 938, 950 (Dist. Ariz. 2007)("Other than general assertions about the Individual Defendants' roles and responsibilities and motivations, the plaintiffs did not plead specific facts to support their allegations of scienter" and allegations of false SOX certifications without more did not provide evidence of scienter.)

II.    PLAINTIFFS' CONFIDENTIAL SOURCES ARE NOT FULLY IDENTIFIED AND, THEREFORE, ARE UNRELIABLE

"[A] complaint relying on statements from confidential witnesses must pass two hurdles to satisfy the PSLRA pleading requirements. First, the confidential witnesses whose statements are introduced to establish scienter must be described with sufficient particularity to establish their reliability and personal knowledge. Second, those statements which are reported by confidential witnesses with sufficient reliability and personal knowledge must themselves be indicative of scienter." *Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981 (9th Cir. 2009); *In re BISYS Sec. Litig.,* 397 F. Supp. 2d at 442 (unidentified sources must be described "with sufficient particularity to support the probability that someone in the informant's position would possess the information alleged.) The unidentified sources positions within the company must be

described, in sufficient enough detail, so that it can be determined whether a person in that position would likely have information relating to their alleged statement. *Id.* Here, Plaintiffs have failed to identify the source of several of its allegations, and, therefore, they must be dismissed.

The Complaint relies on several double hearsay statements attributed to a Mr. Middup. Hearsay does not satisfy the confidential witness reliability standard. *Zucco Partners,* 552 F.3d at 997. None of Mr. Middup's statements are made with personal knowledge. Rather, Middup is alleged to be relaying only secondhand information about accounting practices at one Inyx subsidiary. The individuals who allegedly relay this information to Middup are never identified in any manner. While providing a confidential sources name is not a prerequisite to reliability, failing to provide, at a minimum, sufficient information concerning the sources' position within the company, the job functions they were familiar with and the dates of their employment, is fatal. *Zucco Partners,* 552 F.3d at 995-996 All allegations that rely on Middup and/or these confidential sources must be stricken.

## **CONCLUSION**

For the reasons stated above, Defendants INYX, INC., Kachkar, Goldshmidt and Green request that all claims against them be dismissed with prejudice.

Dated:  September 25, 2009
New York, New York

Respectfully submitted,

**BUTZEL LONG**


s/Sarah Y. Khurana
Martin P. Russo (MR-4134)
Sarah Y. Khurana (SK-9610)
380 Madison Avenue, 22nd Floor
New York, NY  10017
(212) 818-1110

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List by transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Sarah Y. Khurana
Sarah Y. Khurana

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

**SERVICE LIST**

| | |
|---|---|
| David A.P. Brower<br>Brower Piven<br>488 Madison Avenue<br>New York, New York 10022<br>Phone: 212-501-9000<br>Fax: 212-501-0300<br>Email: brower@browerpiven.com<br>*Attorneys for Lead Plaintiff and the Class* | John H. Eickemeyer<br>Vedder Price P.C.<br>1633 Broadway<br>47th Floor<br>New York, New York 10019<br>Phone: 212-407-7760<br>Fax: 212-407-7799<br>Email: jeickemeyer@vedderprice.com<br><br>*Attorneys for defendant Berkovitx & Company, LLP* |

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS