# Exhibit 2

**From:** David A.P. Brower
**Sent:** Monday, March 22, 2010 5:50 PM
**To:** 'Howard S. Koh (hsk@msf-law.com)'
**Cc:** Caitlin M. Moyna
**Subject:** Penn. Ave. Funds v. Inyx et al

Dear Howard:

Attached please find courtesy copies plaintiff's Rule 26 Disclosures and Plaintiff's First Request for Production of Documents addressed to all defendants.

We also note that Meister Seelig & Fein LLP has yet to filed notices of appearance on behalf of defendants Inyx, Inc., Jack Kachkar, Rima Goldsmidt and Jay Green.  If you are not appearing for any of those defendants, please inform us immediately and we will serve the attached directly on the subject defendants.

Finally, assuming you are appearing for all of these defendants, there were  a few minor items left "to be determined" in the Court's Scheduling Order that we should discuss.

If you have any questions, please do not hesitate to call Caitlin Moyna of my office or me.

Very truly yours,

David A.P. Brower

David A.P. Brower
**BROWER PIVEN**
A Professional Corporation
488 Madison Avenue
New York, NY 10022
Telephone:  (212) 501-9000
Facsimile:    (212) 501-0300

*The information contained in this email communication may contain confidential and/or privileged material, including information protected by the attorney-client and/or attorney's work product privileges. It is intended only for the person(s) or entity(ies) to which it is addressed. Receipt of this communication by any person or entity other than those to whom it is addressed is unintended and does not constitute a waiver of any of the applicable privileges.  If you are not an intended recipient, you are hereby notified that any review, retransmission, dissemination or other unauthorized use of, or the taking of any action in reliance upon, the information in this email by any person or entities other than the intended recipient is prohibited.  If you have received this email in error, please contact the sender and delete the material from any computer on which it was received in error.*

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, are not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE PENNSYLVANIA AVENUE FUNDS, Individually And On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br>vs.<br><br>INYX INC., JACK KACHKAR, STEVEN HANDLEY, RIMA GOLDSHMIDT, JAY M. GREEN and BERKOVITS & COMPANY, LLP,<br><br>                    Defendants. | Civil Action No. 08-cv-06857-PKC |

## <u>PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS</u>

Pursuant to Fed. R. Civ. P. 34, Plaintiff requests that Defendants respond to this Request

and produce the following documents for inspection and copying thirty (30) days from the date

of service of this Request. Documents shall be produced at the office of Brower Piven, A

Professional Corporation, 488 Madison Avenue, Eighth Floor, New York, New York 10022, or

at such time and place as may be agreed upon by counsel.

### <u>Instructions</u>

1. Defendants shall produce all responsive documents which are in their possession,

custody or control, or in the possession, custody or control of Defendants' predecessors,

successors, parents, subsidiaries, divisions or affiliates, or their respective officers, directors,

agents, attorneys, accountants, employees, partners or other persons occupying similar positions

or performing similar functions.

2. If any of these documents cannot be produced in full, you are requested to

produce them to the fullest extent possible, specifying clearly the reasons for your inability to

produce the remainder and stating any information, knowledge or belief you have concerning the unproduced portion.

3. The specificity of any Request herein shall not be construed to limit the generality or reach of any other Request herein.

4. Unless otherwise specified, these Requests call for the production of documents generated, sent, received, or in effect from April 1, 2005 through July 2, 2007 (the "Relevant Time Period").

5. The identity, by name and position, of the witness who had possession of the documents at the time they were initially collected for the production and in this action, if different, the name and position of the witness who had possession of the documents at the time the lawsuit was filed, shall be produced together with all responsive documents.

6. Whenever a document is not produced in full or is produced in redacted form, so indicate on the document and state with particularity the reason or reasons it is not being produced in full and described to the best of your knowledge, information and belief, and with as much particularity as possible, those portions of the document which are not being produced.

7. If a document responsive to these requests was at any time in any Defendants' possession, custody or control but is no longer available for production, as to each such document state the following information:

      a.     Whether the document is missing or lost;

      b.     Whether it has been destroyed;

      c.     Whether the document has been transferred or delivered to another person and, if so, at whose request;

      d.     Whether the document has been otherwise disposed of; and

     e.     A precise statement of the circumstances surrounding the disposition of the document and the date of its disposition.

8.     With respect to any category of documents, the production of which you contend is in some way "burdensome" or "oppressive," please state the specific reasons for that objection.

## Definitions

9.     The term "Complaint" means the Consolidated Amended Class Action Complaint For Violation Of The Federal Securities Laws filed in the above-referenced action on March 10, 2009, docket number 32.

10.     The term "Defendants" (and "you" and "your") means Defendants Inyx, Inc. ("Inyx"), Jack Kachkar ("Kachkar"), Rima Goldschmidt ("Goldschmidt"), Jay M. Green ("Green"), and Steven Handley ("Handley").

11.     Inyx includes any parents, subsidiaries, predecessors, affiliates and divisions thereof, and any of the foregoing entities' former or present officers, directors, owners, partners, employees, attorneys, agents, representatives, all other persons occupying similar positions or performing similar functions or acting or purporting to act on their behalf.

12.     The term "Document" means or refers to the original or copy of all written, printed, typed, recorded or graphic material of any kind or character, whether or not in your actual or constructive possession, custody or control.  The term Document includes, without limitation, Electronically-Stored Information, data compilations (from which information can be obtained or translated, if necessary, through detection devices into reasonably usable form), emails and attachments thereto, drafts, letters, instant message logs, Communication, memoranda, records, minutes, statements, notes, and all information memorialized in any

3

manner.

13.     The term "Communication" means any transmission or receipt of information by any means including, without limitation, through written, oral, pictorial, recoreded or electronic means, or through any correspondence, Document or conversation.

14.     The term "Electronically Stored Information" means:

(a)     information that is generated, received, processed and recorded by computers or other electronic devices;

(b)     internal or external web sites;

(c)     output resulting from the use of any software program, whether said electronic data exists in an active file, specifying all files that are accessible and stored in a readily usable format (e.g., active, online data; near-line data; offline storage; and archives) and that do not need to be restored or otherwise manipulated to be useable;

(d)     activity listings of email receipts and transmittals; and

(e)     all items stored on computer memories, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, or on any other media for digital data storage or transmittal (e.g., a personal digital assistant such as a Palm Pilot, Blackberry or iPhone), and any file folder tabs or containers and labels appended or relating to any physical storage device associated with each original or copy of all Documents requested herein.

15.     The term "Individual Defendants" means Kachkar, Goldschmidt, Green, and Handley.

16.     The term "Internal Control Policies" means Inyx's system of internal accounting controls that was designed to ensure that information required to be disclosed in the reports that it files or submits under the Securities Exchange Act of 1934 ("Exchange Act") is recorded,

4

processed, summarized, and reported, within the time period specified by the Securities and Exchange Commission's ("SEC") rules and forms.

17.    The term "SEC Filings" means any form or document filed by Defendants with the SEC on behalf of Inyx, including but not limited to Forms 10-Q, Forms 10-K, Forms 12b-25, Forms 10-K.

18.    The term "Plaintiff" means Lead Plaintiff David S. Lenington in the above-captioned action.

19.    The term "Relevant Time Period" means April 1, 2005 through July 2, 2007.

20.    The term "Hunter" means Colin Hunter, Director of Inyx throughtout the Relevant Time Period.

21.    The term "Berkovitch" means Viktoria Benkovitch, Kachkar's wife.

22.    The term "Ross" means Joseph Ross, former Vice President of Finance for Inyx Europe.

23.    The term "Zinn" means David Zinn, Inyx's Vice President of Finance and Principal Accounting Officer from May 15, 2006 through July 2, 2007.

24.    The term "Westernbank" means Westernbank Puerto Rico.

25.    The term "Inyx USA" means Inyx USA, Ltd.

26.    The term "Inyx Pharma" means Inyx Pharma Limited.

27.    The term "UCB" means UCB Pharma Limited.

28.    The term "King Pharm." means King Pharmaceuticals, Inc.

29.    The term "Ashton" means Ashton Pharmaceuticals Limited.

30.    The term "Inyx Europe" means Inyx Europe Limited.

31.    "Dr. Ready Labs" means Dr. Ready Labs Limited.

5

32.     "Delta" means Novozymesa Delta.

33.     "Link" means Link Pharmaceutical Limited.

34.     The term "Lock Box Account" means the Citibank bank account established for the benefit of Westernbank into which Inyx was obligated to direct its customers to make payments for accounts receivable as part of the various loan agreements entered into between Inyx and Westernbank during the Relevant Time Period.

35.     The term "UCB Agreement" means the UCB-Ashton Contract Manufacturing Agreement, dated August 25, 2005, pursuant to which UCB owed Ashton a receivable per month based upon the level of sales of specific products sold by Ashton to UCB.

36.     The term "Project LINX" means the $7.3 million investment by Inyx in a newly formed legal entity ("LINX") with projects in Dubai, U.A.E. and Qatar.

37.     The term "Project Invar" means the $1.4 million investment in hydrofluoroalkane ("HFA") equipment in 2005.

38.     The term "Project H" means the $1.7 million investment during the fourth quarter of 2006 whereby Inyx entered into product licensing and distribution agreements with pharmaceutical companies in Eastern Europe, North Africa, the Middle East, and the Asian Pacific markets to distribute Inyx products.

39.     The term "MEDA" means a project between October 2005 and June 2006, which related to a deal that Meda AB had proposed to Inyx whereby Inyx would have acquired a German pharmaceutical business from Meda AB in return for which Meda AB would have transferred or subcontracted to Inyx its business/contracts with certain of its customers.

40.     The singular includes the plural and the plural includes the singular.

41.     The masculine includes the feminine and neuter genders. The neuter gender

6

includes the feminine and masculine genders.

    42.    The term "and" means and/or.

    43.    The term "or" means and/or.

## Instructions

    44.    These Requests are continuing in nature so as to require supplemental responses, as specified in Fed. R. Civ. P. 26. Each supplemental response shall be served on Plaintiff within five (5) business days of the discovery or creation of such additional Documents.

    45.    All documents must be produced in their entirety, including all attachments and enclosures, and in their original folder, binder or other cover or container unless that is not possible. Whenever a Document or group of Documents is removed from a file folder, binder, file drawer, file box, notebook or other cover or container, a copy of the label of such cover or other container must be attached to the Document.

    46.    Documents shall be produced in such fashion as to identify the department, branch or office in whose possession the Documents were located and, when applicable, the person in whose possession the Documents were found and the business address of each Document's custodian. A source list, identifying Documents by Bates number or range and the corresponding source information (including person, department, branch and office), shall also be produced at the time of production.

    47.    Pursuant to Fed. R. Civ. P. 34(b), Documents shall be produced in the order they are kept in the usual course of business or shall be organized and labeled to correspond to the categories in this Request.

    48.    If any otherwise responsive Document was, but is no longer in existence or in Your possession, custody or control, state in writing whether the Document: (1) is missing or

lost; (2) has been destroyed; (3) has been transferred or delivered, voluntarily or involuntarily, to another person or entity, the name and address of such person or entity, and at whose request such transfer or delivery was made; or (4) has been otherwise disposed of, and in each instance explain the circumstances surrounding, and the date or approximate date of, such disposition.

49.     Where a claim of privilege is asserted in objecting to any means of discovery or disclosure, and a response is not provided on the basis of such assertion:

      (a)     the attorney asserting the privilege shall identify the nature of the privilege (including work product) which is being claimed;

      (b)     identify the type of Document;

      (c)     describe the general subject matter of the Document;

      (d)     identify the date of the Document;

      (e)     set forth other information as is sufficient to identify the Document for a subpoena duces tecum, including the author of the Document, the addresses of the Document, any other recipients shown in the Document, and the relationship of the author, addresses, and recipient to each other; and each and every fact of basis upon which you claim any such privilege.

      (f)     Notwithstanding the assertion of any objection to production, any Document as to which an objection is raised concerning non-objectionable matter that is responsive to these requests must be produced, but that portion of the Document for which the objection is asserted may be withheld or redacted provided that the Document is marked with the legend "Redacted," so as to reflect any and all portions which have been redacted.

50.     With regard to Electronically-Stored Information, please produce Microsoft

PowerPoint presentations containing audio, Microsoft Excel documents containing macros, and Microsoft Access databases in native format. Please produce all other documents in TIFF format with standard load files, including .opt image load files and .dat metadata load files for Concordance. Electronically-Stored Information may be provided via CD, File Transfer Protocol site, portable hard or flash drive, or other reasonably accessible media format When practicable, please produce hard-copy or physical documents in scanned TIFF format with standard load files, including .opt image load files and .dat metadata load files for Concordance containing beginning Bates, end Bates and extracted text where available.

51.     Data files should not be zipped, encrypted or otherwise restricted or proprietarily protected for specific use. If the native file format is derived from software not accessible with Microsoft Office applications (or other common applications), please so state in response to the particular Request.

52.     If the Document or information requested is in a computer-readable form and not produced in TIFF format, please specify the software (including the exact versions and release) used to create the information. Also specify any other software, hardware or other information such as passwords or user-supplied files that are required or desirable in order to examine and use the information. Specify the exact configuration of the hardware on which the information was created, including the memory size (and graphics control board in the event the information contains or requires graphics). Please give the exact name, release, and version of the operating system used on the hardware.

## Requests for Production

## Request for Production No. 1

All Documents and Communications during the Relevant Time Period concerning the

9

Loan and Security Agreement entered into on March 31, 2005 between Inyx, Inyx USA, and Westernbank.

**Request for Production No. 2**

      All Documents and Communications during the Relevant Time Period concerning the amendment to the March 31, 2005 Loan and Security Agreement entered into in May 2005 between Inyx Pharma and Westernbank.

**Request for Production No. 3**

      All Documents and Communications during the Relevant Time Period concerning the Loan and Security Agreement entered into on August 31, 2005 between Westernbank, Inyx Europe, and Ashton.

**Request for Production No. 4**

      All Documents and Communications during the Relevant Time Period concerning the Guarantee and the Guarantor General Security Agreement executed on August 31, 2005 by Inyx, Inyx USA, and Inyx Pharma.

**Request for Production No. 5**

      All Documents and Communications during the Relevant Time Period concerning the Cross Default Agreement—Security Agreement entered into between Inyx and Westernbank.

**Request for Production No. 6**

      All Documents and Communications during the Relevant Time Period concerning the fraud agreements executed by the Individual Defendants and Hunter on March 31, 2005.

**Request for Production No. 7**

10

All Documents and Communications during the Relevant Time Period concerning the additional fraud guarantees covering Inyx, Inyx EU, and Ashton, executed by Kachkar, Green, and Goldschmidt on August 30, 2005.

**Request for Production No. 8**

All Documents and Communications during the Relevant Time Period concerning the financial statement submitted by Kachkar and Benkovitch to Westernbank on March 1, 2007.

**Request for Production No. 9**

All Documents and Communications during the Relevant Time Period concerning the Amended and Restated Limited Guarantee executed by Kachkar and Benkovitch on June 7, 2007.

**Request for Production No. 10**

All Documents and Communications during the Relevant Time Period concerning the additional Limited Guarantee executed by Kachkar and Benkovitch on June 20, 2007.

**Request for Production No. 11**

All Documents and Communications during the Relevant Time Period concerning the Collateral Deficiency Letter executed by Kachkar and Benkovitch on June 20, 2007.

**Request for Production No. 12**

All Documents and Communications during the Relevant Time Period concerning the demand letters sent to Inyx by Westernbank on June 29, 2007.

**Request for Production No. 13**

All Documents and Communications during the Relevant Time Period concerning the Notice of Default and Demand sent by Westernbank to Inyx on July 3, 2007.

**Request for Production No. 14**

All Documents and Communications during the Relevant Time Period concerning the demand letters sent by Westernbank to the Individual Defendants and Hunter on July 3, 2007.

**Request for Production No. 15**

All Documents and Communications during the Relevant Time Period concerning the demand letters sent by Westernbank to Kachkar and Benkovitch on July 3, 2007 and July 10, 2007.

**Request for Production No. 16**

All Documents and Communications concerning the forensic investigation conducted by Jonathan William Middup, beginning on July 2, 2007, at the request of the Administrators of Inyx Pharma, Inyx Europe, and Ashton.

**Request for Production No. 17**

All daily and monthly reports, customer invoices, and credit notes provided to Westernbank by the Individual Defendants or Hunter concerning the outstanding accounts receivable during the Relevant Time Period.

**Request for Production No. 18**

All accounts receivable assignment sheets that listed invoices received from Inyx, Inyx Europe, Inyx Pharma, Ashton, Inyx Canada, and Inyx USA that were submitted to Westernbank during the Relevant Time Period.

**Request for Production No. 19**

All account receivable reports kept internally, including credit notes, during the Relevant Time Period.

**Request for Production No. 20**

12

All Documents and Communications during the Relevant Time Period concerning Handley's and/or Hunter's instructions to any Inyx employees not to pursue payments from Inyx Pharma's customers, including for customer King Pharm.

**Request for Production No. 21**

All Documents and Communications during the Relevant Time Period concerning invoices related to King Pharm. during the Relevant Time Period.

**Request for Production No. 22**

All Documents and Communications during the Relevant Time Period concerning invoices related to MEDA.

**Request for Production No. 23**

All Documents and Communications during the Relevant Time Period concerning the cancellation of MEDA invoices between December 2006 and January 2007.

**Request for Production No. 24**

All Documents and Communications during the Relevant Time Period concerning the invoices submitted to Westernbank by Inyx in May 2006 related to the UCB Agreement.

**Request for Production No. 25**

All Documents and Communications during the Relevant Time Period concerning the cancellation of the May 2006 invoices related to the UCB Agreement.

**Request for Production No. 26**

All Documents and Communications during the Relevant Time Period concerning the invoices that were submitted to Westernbank that bore a prefix number 7, including for customers Dr. Ready Labs, Delta, UCB, Link, and McDormott Labs. This includes at least invoice 704007, dated August 16, 2006, for approximately £124,500.00 to Dr. Ready Labs;

13

invoice 704008, August 16, 2006, for approximately £286,000.00 to Dr. Ready Labs; invoice 704009, dated August 16, 2006, for approximately £125,000.00 to Dr. Ready Labs; invoice 704010, dated August 22, 2006, for approximately £467,000.00 to Delta; invoice 704011, dated August 25, 2006, for approximately £540,000.00 to UCB; invoice 704012, dated August 30, 2006, for approximately £450,000.00 to UCB; invoice 704013, dated July 9, 2006, for approximately £242,000.00 to UCB; invoice 704014, dated July 9, 2006, for approximately £440,000.00 to Delta; invoice 70415, dated September 15, 2006, for approximately £400,000.00 to Link; invoice 704016, dated September 19, 2006, for approximately £300,000.00 to UCB; invoice 704017, dated September 20, 2006 for approximately £660,000.00 to Delta; invoice 704018, dated October 5, 2006 for approximately £719,000.00 to UCB; invoice 704019, dated October 20, 2006, for approximately £326,000.00 to UCB; invoice 704020, dated October 24, 2006, for approximately £115,000.00 to McDermott Labs; invoice 704021, dated October 24, 2006, for approximately £444,000.00 to Delta; invoice 704022, dated October 26, 2006, for approximately £476,000.00 to McDermott Labs; and invoice 704023, dated November 21, 2006, for approximately £657,000.00 to UCB.

**Request for Production No. 27**

All Documents and Communications during the Relevant Time Period concerning the issuance of multiple invoices for the same product, including invoices for Inyx Pharma's customer Genpharm: invoice OP/1001215 for approximately £140,00.00, dated July 14, 2006; invoice OP/1001354, dated November 20, 2006, for £68,964.00; and invoice OP/1001369, dated November 24, 2006, for £66,472.00.

**Request for Production No. 28**

All Documents and Communications during the Relevant Time Period concerning the

cancellation of invoice OP/1001215 pursuant to a credit note dated January 25, 2007 for £140,00.00.

## Request for Production No. 29

All Documents and Communications during the Relevant Time Period concerning Inyx Pharma's customer Ecolab, including invoice OP/1001228, dated July 27, 2006, for £162,108.37; invoice OP/ 1001229, dated July 28, 2006, for £200,776.42; invoice OP/1001263 for approximately £18,000.00; invoice OP/1001265 for approximately £19,800.00; invoice OP/1001276 for approximately £40,800.00; invoice OP/1001374 for approximately £20,000.00; invoice OP/1001375 for approximately £20,000.00; invoice OP/1001334 for approximately £17,000.00; invoice OP/1001403 for approximately £19,200.00; and invoice OP/1001428 for approximately £40,700.00; and OP/1001464 for approximately £19,900.00.

## Request for Production No. 30

All Documents and Communications during the Relevant Time Period concerning the issuance of credit notes cancelling the July 2006 invoices for Ecolab on January 24, 2007.

## Request for Production No. 31

All Documents and Communications during the Relevant Time Period concerning the Individual Defendants and/or Hunter directing customers to make payments into Inyx Pharma's operational account at Barclays Bank UK (Account number 00402087), instead of the Lock Box Account, including customers Generic UK, Ltd., Proctor & Gamble Pharma SARL, and AstraZeneca AB.

## Request for Production No. 32

All Documents and Communications during the Relevant Time Period concerning the

15

diversion of payments from the Lock Box Account to accounts other than the Lock Box Account, including for customers Medlock Medical Ltd., Bracey's Pharmaceuticals Ltd., Merck SA, Chiesi Pharmaceuticals SpA, Animalcare, Manx Healthcare, UCB, Bioprogress Technology Ltd., Alliance Pharmaceuticals Ltd., and Antigen.

**Request for Production No. 33**

All Documents and Communications during the Relevant Time Period concerning the Individual Defendants and/or Hunter directing customers to deposit payments directly into Ashton's operational accounts, rather than the Lock Box Account, including for customers Focus Pharmaceuticals, Kogen Ltd., Galen, Ltd. UCB, Alliance, Huntly Pharmaceuticals Ltd., Nordic Pharma, Link, Eumedica, Delta, Typharm Ltd., Meda AB, Dales, Lidco Ltd., and Dr. Ready Labs.

**Request for Production No. 34**

All Documents and Communications during the Relevant Time Period concerning payments from UCB being diverted to accounts other than the Lock Box Account, including into Inyx Europe's account at HSBC Bank.

**Request for Production No. 35**

All Documents and Communications during the Relevant Time Period concerning signatories on Inyx Europe's HSBC Bank account.

**Request for Production No. 36**

All Documents and Communications during the Relevant Time Period concerning Handley directing UCB on December 4, 2006, February 1, 2007, and March 5, 2007 to send payments to Ashton's bank account at HSBC Bank (Account Number 32088681).

**Request for Production No. 37**

16

All bank statements from all of Inyx's bank accounts during the Relevant Time Period.

**Request for Production No. 38**

All Documents and Communications during the Relevant Time Period concerning any payment offsets related to the UCB Agreement.

**Request for Production No. 39**

All Documents and Communications during the Relevant Time Period concerning Westernbank's auditor's queries regarding the accounting treatment of the working capital offset related to the UCB Agreement in March 2006.

**Request for Production No. 40**

All Documents and Communications during the Relevant Time Period between Handley, Rose, and Kachkar concerning Westernbank's audit on or around March 2006.

**Request for Production No. 41**

All Documents and Communications during the Relevant Time Period concerning payment offsets related to Nordic Pharmaceuticals and Innovata PLC.

**Request for Production No. 42**

All Documents and Communications during the Relevant Time Period concerning Green informing Westernbank of the $37.7 million in pre-billings and advances on November 20, 2006 and Westernbank demanding payment in full by December 31, 2006.

**Request for Production No. 43**

All Documents and Communications during the Relevant Time Period concerning payments made to the Individual Defendants, Hunter, and/or Berkovitch from any of Inyx's bank

17

accounts.

### Request for Production No. 44

All Documents and Communications during the Relevant Time Period between Westernbank and the Individual Defendants regarding the pre-billing and development invoices.

### Request for Production No. 45

All Documents and Communications during the Relevant Time Period concerning any arrangements between Inyx and Al Saadi Qadhafi.

### Request for Production No. 46

All Documents and Communications during the Relevant Time Period related to the collateral deficiency under any of the loan agreements between Inyx and Westernbank.

### Request for Production No. 47

All Documents and Communications during the Relevant Time Period concerning the preparation of the Form 10-Q for the third quarter of 2006, including any missing documentation.

### Request for Production No. 48

All Documents and Communications during the Relevant Time Period concerning the wire transfers related to Project LYNX and/or Zircon Consultants LLC.

### Request for Production No. 49

All Documents and Communications during the Relevant Time Period concerning the November 16, 2006 conference call between Zinn, Kachkar, Goldschmidt, Green, Hunter and Handley in regard to Form 10-Q for the third quarter of 2006.

18

**Request for Production No. 50**

All Documents and Communications during the Relevant Time Period concerning Zinn's refusal to sign off on the Form 10-K for the year ended December 31, 2006.

**Request for Production No. 51**

All Documents and Communications during the Relevant Time Period concerning unresolved issues for Inyx's audit for the year ended December 31, 2006 and Inyx's ability to file the Form 10-K.

**Request for Production No. 52**

All Documents and Communications during the Relevant Time Period concerning the rewriting of the revenue recognition policy.

**Request for Production No. 53**

All Documents and Communications during the Relevant Time Period concerning the restatement for the first three quarters of 2006.

**Request for Production No. 54**

All Documents and Communications during the Relevant Time Period concerning Inyx's going concern analysis.

**Request for Production No. 55**

All Documents, Communications, and minutes of the meeting held on March 29, 2007 in Miami, Florida between Rotmil, Kachkar, Handley, and Zinn to discuss the Audit Committee's request for documentation required for its audit.

**Request for Production No. 56**

All Documents and Communications during the Relevant Time Period concerning Project Invar during the Relevant Time Period.

19

**Request for Production No. 57**

All Documents and Communications during the Relevant Time Period concerning Project LINX.

**Request for Production No. 58**

All Documents and Communications during the Relevant Time Period concerning Project H.

**Request for Production No. 59**

All Documents and Communications during the Relevant Time Period concerning the resignations of Goldschimdt, Douglas Brown, Peter Littmann, Roger Harrison, Rotmil, Zinn, Handley, and Hunter.

**Request for Production No. 60**

All Documents and Communications during the Relevant Time Period concerning Exaeris, Inc.'s and Inyx USA's bankruptcy proceedings in the U.S. Bankruptcy Court for the District of Delaware.

**Request for Production No. 61**

All Documents and Communications during the Relevant Time Period concerning removing Goldschmidt as an authorized signatory on Inyx's bank accounts.

**Request for Production No. 62**

All Documents and Communications during the Relevant Time Period concerning the restructuring and/or paying off of the Westernbank loans.

**Request for Production No. 63**

All Documents, Communications, and meeting notes from the meetings between Westernbank, Kachkar, Zinn, Green, and Handley in Miami, Florida during the week of June 5,

20

2007.

**Request for Production No. 64**

All Documents and Communications concerning Inyx's delisting from the NASDAQ OTC Bulletin Board during the Relevant Time Period.

**Request for Production No. 65**

All Documents and Communications concerning Inyx's internal operational and financial controls, including, but not limited to the design, implementation and monitoring of such internal controls.

**Request for Production No. 66**

All Documents relied upon or supporting each of the Individual Defendants' certifications issued pursuant to the Sarbanes-Oxley Act ("SOX") or any other federal statute and/or regulation during the Relevant Time Period.

**Request for Production No. 67**

All drafts of all SEC Filings during the Relevant Time Period.

**Request for Production No. 68**

All Documents and Communications concerning compliance with Generally Accepted Accounting Principles ("GAAP"), Generally Accepted Accounting Standards ("GAAS") and/or any rule promulgated by the SEC during the Relevant Time Period.

**Request for Production No. 69**

All Documents and Communications concerning any changes considered or implemented in connection with the Internal Control Policies during the Relevant Time Period.

**Request for Production No. 70**

      All calendars, diaries, appointment books and telephone logs maintained by or for any of the Individual Defendants and Hunter during the Relevant Time Period.

**Request for Production No. 71**

      All Documents and Communciations concerning the Individual Defendants' and Hunter's compensation, including without limitation all guaranteed salary as well as any bonus, vacation, or other compensation.

**Request for Production No. 72**

      All Documents and Communications concerning incentive compensation plans and/or other benefit plans for the Individual Defendants and Hunter during the Relevant Time Period.

**Request for Production No. 73**

      All insurance policies, agreements and/or by-laws under which any Defendant may receive indemnification, reimbursement or payment upon all or part of a judgment which may be entered in this action.

**Request for Production No. 74**

      All Documents and Communications concerning Defendants' policy for the destruction or retention of records and/or files, including electronic data, and, in particular any policy or policies related to this litigation.

Dated: March 22, 2010

**BROWER PIVEN**
A Professional Corporation

David A.P. Brower
488 Madison Avenue
Eighth Floor
New York, New York 10022
Telephone: (212) 501-9000
Facsimile:  (212) 501-0300

Charles J. Piven
1925 Old Valley Road
Stevenson, Maryland 21153
Telephone: (410) 332-0030
Facsimile:  (410) 685-1300

*Counsel for Plaintiff and Lead Counsel for the Class*

23

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2010, I served true and correct copies of the foregoing

Plaintiff's First Request For Production Of Documents on Defendants' counsel by causing copies

to be sent by first-class U.S. mail, postage prepaid, and by electronic mail:

Howard S. Koh
Meister Seelig & Fein LLP
Two Grand Central Tower
140 East 45th Street
19th Floor
New York, NY 10017
hsk@msf-law.com

I also hereby certify that on March 22, 2010, I served true and correct copies of the

foregoing Plaintiff's First Request For Production Of Documents on Defendant Steven Handley

by causing copies to be sent by U.S. mail, postage prepaid:

Steven Handley
37 Parkland Dr.
Elton, Chester
Cheshire CH2 4PG
England

David A.P. Brower